TANNER *v.* MANOS.

Opinion delivered October 8, 1923.

1. REFORMATION OF INSTRUMENTS—EVIDENCE.—It is not essential in order to entitle one to reformation of a deed as against a subsequent purchaser of the land to prove any formal notice to the latter; it being sufficient to show circumstances which put the purchaser upon inquiry.

2. REFORMATION OF INSTRUMENTS—AGAINST WHOM ENFORCED.—Where a debtor and his wife executed a mortgage of his own homestead which correctly described the land intended to be conveyed, and thereafter conveyed the land to his wife, who subsequently executed a conveyance to a third person, since the wife had no further interest in the land, the mortgage may be reformed as to the subsequent purchaser, so as to describe the land properly.

Appeal from Benton Chancery Court; *Ben F. McMahan,* Chancellor; affirmed.

*Rice & Rice,* for appellant.

A mortgage is good between the parties, though not acknowledged or recorded. 71 Ark. 517. An unrecorded mortgage is not void or ineffectual as a lien between the parties. 68 Ark. 162. The chancery court cannot reform the deed of a married woman. 53 Ark. 55. A married woman cannot relinquish her dower save in the manner prescribed by statute. 104 Ark. 226; 148 S. W. 257.

*C. A. Fuller,* for appellee.

Where a mortgage by mistake incorrectly describes land intended to be conveyed, the mortgagee is entitled to a reformation thereof as against the mortgagor, or any subsequent purchaser with notice of such mistake. Section 5578, C. & M. Digest; 89 Ark. 259; 87 Ark. 371; 104 Ark. 226; 72 Ark. 534. A married woman's conveyance can be reformed. 72 Ark. 534.

McCULLOCH, C. J. This action was instituted by appellee in the chancery court of Benton County, seeking reformation of a mortgage on real estate in that county so as to correctly describe the land which it is alleged was intended to be conveyed.

R. D. Hogan, who was one of the defendants below, but who has not appealed from the decree, was the owner of the land in controversy, and executed a mortgage thereon to appellee to secure a debt in the sum of $800 for borrowed money. Hogan's wife, Lillie, joined in the conveyance for the purpose of relinquishing her homestead and dower rights.

The land in controversy contained sixty acres, and is properly described as the east half of the northwest quarter of the northeast quarter, and the southwest quarter of the northeast quarter of section twenty-four, township twenty north, range thirty-four west, in Benton County. It will be noted that of the two contiguous tracts in this description, one is a twenty-acre tract and the other a forty-acre tract. The mortgage correctly described the tract containing twenty acres, but the other tract in the mortgage was described as the southwest quarter of the northwest quarter of the northeast quarter of said section twenty-four, which contains only ten acres and is in a different subdivision from that which Hogan owned. The mortgage recites, however, that the two tracts contain sixty acres, but, according to the description of the two tracts in the mortgage, they really contain only thirty acres. The mortgage was duly placed of record.

After the execution of the mortgage, Hogan and wife separated and were divorced, and he conveyed the land to his wife, who subsequently sold and conveyed to appellant, B. F. Tanner and wife, who were joined as defendants in this suit.

It is alleged in the complaint, and has been proved by a preponderance of the evidence, that the land in controversy was the same land owned by Hogan and wife, who, at the time the mortgage was executed, were in actual occupancy of the land as their homestead, and had so occupied it for a great many years, and that it had been thus occupied by Hogan's father. It was also alleged that appellants were informed as to the mortgage

on the land at the time they purchased it and received a conveyance from Lillie Hogan. Neither Hogan nor his wife made any defense, as they had parted with the title, and had no further interest in the land.

Appellants filed an answer, denying all the allegations of the complaint with respect to the alleged mistake in the execution of the mortgage, and asserted that, if there was a mistake, appellants were innocent purchasers for value, and had no information as to the fact that there had been a mistake in the description or that the land in controversy was intended to be described. It was also alleged that the twenty-acre tract described in the mortgage was not owned by either Hogan or his wife, but that it was owned by a man named Wilson, from whom appellant had received a deed of conveyance.

On the final hearing of the cause, on oral and documentary evidence, the court found the facts in favor of appellee, and granted the relief prayed for by reforming the mortgage and ordering it foreclosed.

It is contended, in the first place, that the decree was erroneous as to the twenty-acre tract for the reason that appellee failed to prove, as alleged, that the Hogans were the owners of that tract. We are of the opinion that the proof shows overwhelmingly that Hogan was the owner of this tract, and that he and his wife had been in actual occupancy for a great many years—long enough to constitute an investiture of title by limitation. It is true that there was a break in the record title, which showed that the title had been in Wilson, but there is scarcely any dispute in the facts which established the title of Hogan by adverse possession for the statutory period of limitation.

There is a great volume of testimony on the question as to the information of appellant concerning the mistake in the description of the land in the mortgage. It is unnecessary to discuss the testimony in detail, for we are clearly of the opinion that it sustains the finding of the chancellor that appellant B. F. Tanner was advised, when

he bought the land, that appellee held a mortgage on it for $800. The information was sufficient to put him on notice as to the error in the description. The land was the homestead of the Hogans, actually occupied by them, and was the only land they owned. The testimony of numerous witnesses is to the effect that appellant Tanner was present at a certain trial between appellee and Mrs. Hogan, where testimony was drawn out to the effect that appellee held a mortgage on this land for $800. There is other testimony tending to show that appellant Tanner received other information on this subject, and that he knew, when he bought the land, that there was a mortgage on it. According to the undisputed evidence, he bought the land at a grossly inadequate price—he paid $400 for it, whereas the lowest estimate of value is $2,000.

It is not essential, in order to entitle appellee to a reformation of the deed, to prove any formal notice to appellants that a mistake had been made in the preparation of the mortgage. It is, as before stated, sufficient to show circumstances which put them upon inquiry. The evidence is, we think, abundant for that purpose.

Finally, it is contended that there can be no reformation for the reason that the land was the homestead at the time the mortgage was executed. The contention is, in other words, that there can be no reformation of the instrument because a married woman was a party to it. The land was the homestead of R. D. Hogan, but the fact that his wife had to join him in the execution of the conveyance in order to make it valid does not prevent a court of equity from reforming the instrument so as to correct a mutual mistake of the parties to it. *Sledge & Norfleet Co.* v. *Craig,* 87 Ark. 371. We held in *Morris* v. *Covey,* 104 Ark. 226, that this rule does not apply to a reformation of a married woman's relinquishment of dower, and that a court of equity will not grant any such relief. Appellants are not, however, as purchasers of the land from Lillie Hogan, in an attitude to resist the reformation of the deed by the correction of the mutual

mistake. Even if the Hogans had not parted with the title, appellee would be entitled to a reformation as against R. D. Hogan, and the relief would fail only as to the wife's relinquishment of dower. Since the execution of the mortgage, Lillie Hogan's dower interest was merged into the legal title by the conveyance to her from her husband, and she then parted with the title by a conveyance to appellants. The dower interest has thereby been extinguished and is no longer an element of the controversy. In other words, it is not essential to the relief granted to appellee that there should be a reformation of the relinquishment of dower, which has, as before stated, been entirely extinguished. The case in that respect stands as if there had never been any dower interest.

Our conclusion is therefore that the decree of the chancellor is correct in all respects, and the same is affirmed.